## Application of A. B. C. LIQUOR STORE.

Railroad & Public Utilities Commission.
November 13, 1951.

G. B. Fishback and R. L. Williams, of Fishback, Williams & Smith, Orlando, for applicant.

George E. Owen, Tallahassee, for the Attorney General.

BY THE COMMISSION.

On August 17, 1951 the Honorable Richard W. Ervin, Attorney General, notified the manager of Southern Bell Tel. & Tel. Co. that it had been determined by investigation made by his office that business telephone numbers 9811 and 9812 located at 60 West Central Ave., Orlando, listed in the name of A. B. C. Liquors, were being used in violation of the laws of Florida, particularly the gambling laws. The Attorney General's notice requested that the telephone service be discontinued and the facilities removed, and pursuant to request the telephone company discontinued telephone service and removed the instruments and wiring on August 23, 1951.

By letter dated August 31 J. D. Holloway, owner of A. B. C. Liquors, through his attorney filed application with the commission for reinstallation of telephone service. From the record it appears that the premises located at 60 West Central Ave. are occupied by A. B. C. Liquors, owned by J. D.

Holloway. Mr. Holloway also owns and operates other liquor stores in and around Orlando and contends that his business at 60 West Central Ave. is his main business location and that telephone service at that location is necessary in the conduct of his business.

James B. Toney, an assistant attorney general whose duties are to enforce the laws against the use of communication facilities for illegal purposes, testified that shortly prior to July 23, 1951 he had received complaints from the Volusia County Kennel Club that their races were being booked illegally at the A. B. C. Liquor Store. On the afternoon of July 23 he visited the premises and noted that the telephones were being used more frequently than would ordinarily be expected for such a place of business. At approximately 8 P. M. on July 23 he observed an employee in the premises making frequent use of the telephone and noted that the employee took a stack of tickets or slips of paper and started counting them on the adding machine. He then took a stack of bills and after counting them, handed the slips of paper to the bartender. The bartender then dialed a number on the telephone and started reading something off the tickets or slips. The investigator placed himself in a position where he heard the bartender say, "and in the second race." This witness, who is qualified as an expert on illegal gambling activities, testified that the tickets or slips were similar to those apprehended in other gambling establishments throughout the state.

Further investigation was conducted by a special assistant to the Attorney General and thereafter on August 15 Mr. Toney, together with representatives of the state beverage department, made a search of the premises at 60 West Central Ave. While they were on the premises the telephone rang continuously and was answered by this witness or the beverage department officer. The callers would ask for some employee of the company, calling them by name of Charlie, Lester, or Jack. One caller identified himself as Jim Everitt. This individual started calling numbers in to Mr. Toney, who, in order to get another witness, gave the phone to one of the beverage department officers, who took the bet from Jim Everitt. The information received by these officers was that Everitt was placing a $5 bet on the third and fourth dogs in the fourth race. Following this inspection and search Mr. Toney made an investigation of Jim Everitt and Everitt admitted to him that he was a bookmaker.

George Brown, special assistant to the Attorney General, visited the A. B. C. Liquor Store on July 24 and returned on July 26 between 7:30 and 8 P. M. On the 27th of July he made another visit to the premises and while there he observed a man identified as Mr. Henderson talking to the clerk. This man looked at a racing program, called out some numbers, which the clerk wrote down on a ticket or slip of paper similar to that testified to by Mr. Toney. He saw this individual give the clerk two one-dollar bills. He also observed the bartender using the telephone and heard him utter the words "first race and second race" and, at the same time, call off various numbers in connection with these words.

J. D. Bartleson, supervisor for the state beverage department, corroborated the testimony of Mr. Toney as to the search conducted on August 15, and made a memorandum of the call from Jim Everitt. His memorandum discloses that Everitt stated over the phone, "pick them 44 for $5 and 43 for $5." He also testified that there were numerous other calls while the officers were present.

The applicant contends that he has no knowledge of any illegal use of telephone facilities at his place of business at 60 West Central Ave. He represents to the commission that if the telephones are reinstalled, he will supervise them in such a manner that it would be impossible for any person to use them for the dissemination of gambling information. He offers to give written permission to the telephone company to listen in or monitor his telephones and give information to the proper authorities in the event any misuse is discovered. He agrees to put the telephones where the general public cannot use them.

The evidence of record is clear and convincing that the telephone facilities were being used for illegal purposes prior to the time they were discontinued. The commission has heretofore determined and in this proceeding it reaffirms the policy that it is the duty and responsibility of a telephone subscriber to so supervise the use of his telephone facilities that the possibility of any illegal use thereof will be reduced to a minimum. The commission is of the opinion that the record in this case does not justify an immediate reinstatement of telephone service. Applicant has failed to justify such immediate reinstatement. It is the opinion of the commission that the applicant should be deprived of telephone service for a period of

18 months from the date service was discontinued. We believe that if applicant is deprived of the facilities for that period of time, he will not permit them to be used in the future in violation of the laws and public policy of this state.

It is therefore ordered, adjudged and decreed that the application for immediate reinstatement of telephone service be and it is hereby denied. It is further ordered that Southern Bell Tel. & Tel. Co. be and it is hereby authorized to reinstall telephone service to applicant at the expiration of 18 months from the date service was discontinued, on proper application in conformity with its usual and customary business practices relating to the installation of telephone service.

Commissioner Jerry W. Carter dissents.